S09A1144. COLEMAN v. THE STATE.
S09A1922. JACKSON v. THE STATE.

(687 SE2d 427)

BENHAM, Justice.

Joseph Pernice and Sang Duk Lee suffered fatal gunshot wounds in Muscogee County in 2003. Appellant Farnsworth Coleman, Jr., was convicted of and sentenced for the malice murder and aggravated assault of Pernice, as well as possession of a firearm during the commission of a crime and two violations of the Georgia Controlled Substances Act. Coleman was acquitted of the murder and aggravated assault of Sang Duk Lee. Appellant Anthony Jackson was convicted of and sentenced for the malice murder and aggravated assault of Sang Duk Lee, possession of a firearm during the commission of a crime, and two violations of the Georgia Controlled Substances Act.[1] Jackson was acquitted of the murder and aggra-

---

[1] The Muscogee County grand jury initially returned a true bill of indictment on August 19, 2003, charging appellants with two counts of malice murder, felony murder (aggravated assault), and possession of a firearm during the commission of a crime in connection with the deaths of Joseph Pernice and Sang Duk Lee. A ten-count true bill of indictment with the same six charges and two charges of violating the Georgia Controlled Substances Act was returned on February 17, 2004. The joint trial commenced March 22, 2004, and concluded with the jury's return of its verdicts finding Coleman guilty of the malice murder, felony murder (aggravated assault), and aggravated assault of Pernice and not guilty of the same charges in which Sang Duk Lee was the victim; and finding Jackson guilty of malice murder, felony murder (aggravated assault of Sang Duk Lee), and the aggravated assault of Sang Duk Lee, and not guilty of the same charges in which Joseph Pernice was the victim. In addition, both defendants were found guilty of two counts of possession of a firearm during the commission of a crime and two counts of violating the Georgia Controlled Substances Act. On April 23, 2004, Coleman was sentenced to life imprisonment for malice murder, a twenty-year sentence for aggravated assault, a ten-year sentence for methamphetamine possession, a five-year sentence for each of the firearm possession convictions, and a twelve-month probated sentence for misdemeanor marijuana possession, all of which sentences were to run consecutively. Jackson received the same sentences on the same day except his ten-year sentence for possession of methamphetamine runs concurrently with the sentence of life imprisonment.

Coleman's motion for new trial, filed on May 20, 2004, and amended on May 11 and 19, 2006, was denied on February 11, 2008. After his direct appeal to this Court was dismissed as

vated assault of Pernice. Each defendant filed an appeal in this Court.

1. Joseph Pernice and Sang Duk Lee were shot to death near gasoline pumps at a Muscogee County service station. It is undisputed that the shooters were Coleman and Jackson. A firearms examiner from the State Crime Lab testified that the bullets removed from Pernice were fired from a .45 caliber pistol, and the bullets removed from Sang Duk Lee were fired from a 9mm weapon. A motorist passing by the station identified appellant Coleman as the man she saw shoot Pernice in the back as Pernice ran away from the shooter. The witness testified that when Pernice fell to the ground after being shot in the back, the shooter turned away as if to get in a nearby Jeep Cherokee, but then turned back toward the victim and fired one or two more shots at the prone victim. The forensic pathologist who performed the autopsies of the two victims testified that Pernice suffered six gunshot wounds, including one to the middle of his back that severed his spinal cord and caused immediate loss of leg function, one to the victim's back left thigh which entered the victim's body at an angle consistent with the victim having been shot while lying face down, and one that entered the left side of the victim's head, fractured his skull, and traveled to the right side of the victim's head.

A soft-drink deliveryman saw a man meeting appellant Jackson's description shoot Sang Duk Lee from a distance of ten feet as the victim stood near the driver's door of a nearby white sportscar and the shooter stood behind a Jeep Cherokee. The medical examiner testified that Sang Duk Lee was struck by three bullets and had 1.5 quarts of blood in his chest cavity at the time of autopsy. A shot fired when the gun was in contact with the victim's skin entered and exited his left arm and entered his left abdomen and exited the victim's body through his back; another shot, fired when the victim was 2"-36" from the gun, entered the front of the victim's left shoulder and caused internal bleeding by injuring the aorta and left pulmonary artery, and injured both lungs. Another shot, fired when the gun and the victim were separated by more than 18", entered the victim's lower left back, passed through his abdomen, and lodged in his intestines. No weapon was found near either of the two victims.

---

untimely, Coleman was granted an out-of-time appeal which was dismissed as untimely. Coleman was granted a second out-of-time appeal on March 4, 2009; his notice of appeal was filed on March 24, 2009; and the appeal was docketed on April 2, 2009, in this Court, which heard oral argument on June 8. Jackson's motion for new trial, filed May 18, 2004 and amended on June 13, 2006, was denied June 5, 2008. After this Court dismissed Jackson's direct appeal, the trial court granted Jackson an out-of-time appeal, which was docketed in this Court on August 3, 2009, pursuant to a notice of appeal filed July 23, 2009. Jackson's appeal was submitted for decision on the briefs.

Appellants left the scene in Coleman's Jeep Cherokee. They stopped at an apartment complex in Alabama where they visited with friends and family of Coleman. They then left and headed further into Alabama. Their vehicle was spotted eight-ten miles from the Georgia-Alabama border by an Alabama deputy sheriff who gave chase, causing the driver of the Jeep Cherokee to pull off the road and the occupants to abandon the vehicle. They fled into nearby wooded marshland where they were apprehended by members of several Alabama canine units. A hand-rolled marijuana cigarette and a pipe which tested positive for the presence of methamphetamine were discovered in a search of the Jeep Cherokee.

The evidence was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that appellants were guilty of malice murder, aggravated assault, and possession of a firearm during the commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Both appellants challenge the sufficiency of the evidence of venue with regard to the convictions for possession of methamphetamine and of the less than an ounce of marijuana that were discovered in a search of Coleman's impounded Jeep Cherokee conducted in Muscogee County pursuant to a warrant after the vehicle was recovered from Lee County, Alabama, where appellants had abandoned it.

The Georgia Constitution states that "all criminal cases shall be tried in the county where the crime was committed." Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. See also OCGA § 17-2-2.

> Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. "Like every other material allegation of an indictment, venue must be proved [by the prosecution] beyond a reasonable doubt." [Cit.] Proof of venue is a part of the State's case, and the State's failure to prove venue beyond a reasonable doubt renders the verdict contrary to law, without a sufficient evidentiary basis, and warrants reversal.

*Jones v. State*, 272 Ga. 900, 901-902 (537 SE2d 80) (2000).

(a) In its case-in-chief, the State presented no evidence that the methamphetamine residue and the marijuana found in the vehicle appellants abandoned in Lee County, Alabama, were in the possession of appellants while they were in Muscogee County. However, on cross-examination, Coleman admitted he had hand-rolled the marijuana cigarette found in the Jeep Cherokee the morning of the shooting. That testimony, coupled with the undisputed fact that appellants and the Jeep Cherokee were at the Muscogee County

294

service station at a time following the point at which Coleman admitted having made the cigarette, established beyond a reasonable doubt that appellants possessed the marijuana cigarette in Muscogee County and established venue for that crime as being in Muscogee County.

(b) There was no direct evidence of possession in Muscogee County of the pipe upon which traces of methamphetamine were found, and neither appellant made an admission concerning the pipe as Coleman did with regard to the marijuana. Both appellants testified they went to an apartment complex in Alabama immediately after the shootings and visited two apartments there. They then decided to drive to the Alabama home of Coleman's parents, but they were spotted by the Alabama deputy sheriff before they could arrive. Inasmuch as there is no evidence placing the pipe in the Jeep Cherokee while the vehicle was in Muscogee County and there is a possibility the pipe was put in the Jeep after the shootings during one of several stops appellants made while in Alabama, venue for possession of methamphetamine was not proven to be in Muscogee County. Since venue is an essential element of the crime, the failure to prove beyond a reasonable doubt that appellants possessed the pipe with traces of methamphetamine on it in Muscogee County "renders the verdict contrary to law, without a sufficient evidentiary basis, and warrants reversal." Id.

3. Appellant Jackson contends the trial court erred when it did not find that his conviction for the aggravated assault of Sang Duk Lee merged as a matter of fact into his conviction for the malice murder of the same victim, and when it imposed sentences on both convictions. The malice murder count charged Jackson with unlawfully and with malice aforethought causing the death of the victim by shooting him with a handgun; the aggravated assault count alleged that Jackson unlawfully made an assault upon the victim with a handgun, a deadly weapon. The State contends the convictions do not merge because Jackson shot the victim three times, with the final shot inflicting the fatal wound and the non-fatal injuries inflicted prior to the final injury being sufficient to support the aggravated assault conviction. See *Parker v. State*, 281 Ga. 490 (2) (640 SE2d 44) (2007); *Farley v. State*, 277 Ga. 622 (2) (593 SE2d 328) (2004); *Lowe v. State*, 267 Ga. 410 (1) (b) (478 SE2d 762) (1996).

OCGA § 16-1-7 (a) affords a defendant with substantive double jeopardy protection by prohibiting multiple convictions and punishments for the same offense. *Drinkard v. Walker*, 281 Ga. 211, 212 (636 SE2d 530) (2006). OCGA § 16-1-7 (a) (1) prohibits a defendant from being convicted of more than one crime if one crime is included in another, and aggravated assault is included in the crime of malice murder when the former "is established by proof of the same or less

than all the facts or a less culpable mental state than is required to establish the commission of [the latter]." OCGA § 16-1-6 (1).

When a victim suffers multiple wounds inflicted in quick succession, each infliction of injury does not constitute a separate assault. *Montes v. State*, 262 Ga. 473 (1) (421 SE2d 710) (1992). However, a separate judgment of conviction and sentence is authorized if a defendant commits an aggravated assault independent of the act which caused the victim's death. *Lowe v. State*, supra, 267 Ga. at 411-412. When a series of shots are separated by a "deliberate interval" and a non-fatal injury is sustained prior to the interval and a fatal injury is sustained after the interval, the earlier, non-fatal infliction of injury can serve to support a conviction for aggravated assault. *Parker v. State*, supra, 281 Ga. at 492 (non-fatal injuries caused by shots to the victim's stomach and cheek inflicted before the fatal shot to the back of the victim's head were sufficient to support the aggravated assault conviction); *Farley v. State*, supra, 277 Ga. at 623 (non-fatal injury caused by shot to victim's arm inflicted before the fatal shot to victim's back was sufficient to support the aggravated assault conviction); *Lowe v. State*, supra, 267 Ga. at 412 (non-fatal wound to the victim's arm inflicted before the fatal shot to the victim's abdomen supports the aggravated assault conviction). See also *Stockford v. State*, 276 Ga. 241 (3) (575 SE2d 889) (2003) (two distinct series of shots fired, with the second series causing death). In the case at bar, the medical examiner who performed the autopsy testified that the cause of death was "gunshot wounds," did not identify any injury as the fatal shot, acknowledged he could not testify as to the order in which the bullets entered the victim's body, and stated no single wound would have instantly stopped the victim. Even if we assume the multiple wounds were not inflicted in quick succession, in the absence of evidence that one wound was fatal and was preceded by a "deliberate interval" in the series of shots fired and by the infliction of non-fatal wounds, we cannot say there is evidence to support the infliction of an aggravated assault separate and apart from the malice murder. Compare *Parker*, supra, *Farley*, supra, *Lowe*, supra, and *Stockford*, supra. Accordingly, Jackson's conviction for aggravated assault must be vacated because it merged as a matter of fact into the conviction for malice murder, the sentence imposed thereon must be vacated, and the case remanded to the trial court for resentencing. See *Carter v. State*, 285 Ga. 394 (8) (677 SE2d 71) (2009).

4. Appellant Jackson contends his conviction for possession of a firearm during the commission of the crime of aggravated assault of Joseph Pernice cannot stand in light of his acquittal of the underlying felony. However, since Georgia rejected the "inconsistent verdict rule" in *Milam v. State*, 255 Ga. 560 (2) (341 SE2d 216)

(1986), a defendant cannot attack as inconsistent a jury verdict of guilty on one count and not guilty on a different count. *Lawrence v. State*, 274 Ga. 794 (2) (560 SE2d 17) (2002) (conviction for possession of a firearm in commission of a felony upheld although defendant was acquitted of underlying felony). See also *Kimble v. State*, 236 Ga. App. 391 (1) (512 SE2d 306) (1999), overruling *Strong v. State*, 223 Ga. App. 434 (477 SE2d 866) (1996) (in which the Court of Appeals reasoned that acquittal of the underlying felony of the firearm-possession charge rendered a conviction of the possession charge mutually exclusive). Cf. *Carter v. State*, 265 Ga. App. 44 (6) (593 SE2d 69) (2004) and *Prather v. State*, 259 Ga. App. 441 (1) (576 SE2d 904) (2003) (where Court of Appeals found mutually exclusive the guilty verdict for possession of a firearm during the commission of a crime and the guilty verdict for a felony included within the specified felony when the trial court's jury instructions authorized the jury to convict on the possession charge only during the commission of the offense specified in the indictment). Accordingly, the conviction for possession of a firearm during the commission of a crime is valid.

5. Appellant Coleman maintains the trial court erred during jury selection when it dismissed a member of the venire for cause. After the potential juror stated she knew Coleman's family, attended the same church as the family and had talked with members of the family, the trial court asked if the venire member knew about the case. The venire member stated, "A little, yeah" and the trial court dismissed the venire member from the courtroom, instructing her to return to the jury assembly room. Coleman contends the trial court erred by dismissing the potential juror for cause without ascertaining whether she held an opinion so fixed and definite that she could not set it aside and decide the case based on the evidence or the court's charge on the evidence. See *Heard v. State*, 274 Ga. 196 (4) (552 SE2d 818) (2001). However,

> a defendant has no vested interest in a particular juror but rather is entitled only to a legal and impartial jury; thus, the . . . [dismissal] for cause [for a reason that is not constitutionally impermissible], even if erroneous, affords no ground of complaint if a competent and unbiased jury is selected.

*Perry v. State*, 264 Ga. 524 (2) (448 SE2d 444) (1994). There being no showing that a competent and unbiased jury was not selected, the assertion of error is without merit.

6. Noting that a motor vehicle is statutorily included in the definition of "habitation" (OCGA § 16-3-24.1), both appellants contend they were denied their constitutional right to effective assis-

tance of counsel because trial counsel failed to request a jury instruction on the use of force in defense of habitation, found in OCGA § 16-3-23.[2] "Unlike the defense of justification, the habitation defense, in recognition of the sanctity of a person in his home [or motor vehicle or place of business], allows the use of deadly force in certain situations even if the occupant does not fear death or great bodily injury." *Hammock v. State*, 277 Ga. 612 (3) (592 SE2d 415) (2004). In order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that counsel performed deficiently and that the deficient performance prejudiced the defendant such that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. *Pruitt v. State*, 282 Ga. 30 (4) (644 SE2d 837) (2007).

Appellants were required to establish deficient performance by showing that the failure of trial counsel to request a charge on defense of habitation fell below an objective standard of reasonableness. *Benham v. State*, 277 Ga. 516, 517 (591 SE2d 824) (2004). In examining whether appellants met this standard, we keep in mind that a request to charge the jury is appropriate where there is any evidence, however slight, on which to predicate it. *Hendrix v. State*, 268 Ga. App. 455 (1) (602 SE2d 133) (2004). OCGA § 16-3-23, the statute which sets out the defense of habitation, authorizes the use of force reasonably believed necessary to prevent another's unlawful entry into or attack upon a habitation, and the use of deadly force if:

(1) [t]he entry is made or attempted in a violent and tumultuous manner and [the defendant] reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person [in the habitation] and that such force is necessary to prevent the assault or offer of personal violence; ... or (3) [t]he person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony.

---

[2] A person is justified in ... using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation; however, such person is justified in the use of force which is intended or likely to cause death or great bodily harm only if:

(1) The entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence. ... OCGA § 16-3-23. "Habitation" is statutorily defined as meaning "any dwelling, motor vehicle, or place of business. ..." OCGA § 16-3-24.1.

Critical to the application of the defense of habitation is the moment in time at which the defendant resorts to deadly force and the act being performed by the victim at that moment. The statute authorizes the use of deadly force in response to an unlawful entry into or an attack upon the habitation. *Hammock v. State*, supra, 277 Ga. 612. Where a defendant does not use deadly force until the justification for the use of deadly force is over, there is no evidence to support a charge on defense of habitation. *Patel v. State*, 279 Ga. 750 (a) (620 SE2d 343) (2005). Where there is no evidence that the victim was attempting to enter or attack the habitation at the time he was injured by the defendant, the defense of habitation is not available. *Wike v. State*, 262 Ga. App. 444 (585 SE2d 742) (2003); *Darden v. State*, 233 Ga. App. 353 (1) (504 SE2d 256) (1998) (OCGA § 16-3-23 is not applicable where the defendant, believing wrongly that the victim had fired shots into the habitation, stepped outside the habitation and shot the victim at a time when the victim was walking away from the habitation and toward his car). With these concepts in mind, we examine the testimony of appellants.

(a) Appellant Coleman testified he was in the front passenger seat of his vehicle which was parked at a fuel pump at the gas station when he and appellant Jackson, who was sitting in the driver's seat, observed the victims approaching Coleman's vehicle. Coleman testified that Jackson was punched, while Coleman's door was opened and someone had him in a chokehold in an attempt to drag him out of the vehicle. Coleman stated he was pulled out of the car, heard gunshots and, while outside the car, "just opened fire, shooting everywhere." Coleman's testimony placed him and victim Pernice outside the habitation when Coleman fired the shots that struck Pernice. While Pernice had entered the habitation to grab Coleman, upon his successful removal of Coleman from the habitation, Pernice was no longer in the habitation or attempting to enter the habitation, making OCGA § 16-3-23 unavailable to him as a defense. Compare *Benham v. State*, supra, 277 Ga. at 517 (where defendant used deadly force against victim when victim, who had unlawfully entered defendant's car for the purpose of offering personal violence to the occupants, continued to assault defendant while defendant was in her car). Since Coleman's testimony did not provide the slight evidence necessary to support a charge on defense of habitation, trial counsel did not perform deficiently in failing to request a charge and, in the absence of deficient performance on the part of trial counsel, the trial court did not err when it determined that Coleman had not carried his burden of proof on his claim of ineffective assistance of counsel.

(b) Appellant Jackson testified that he drove the Jeep Cherokee to the fueling station and removed the keys from the ignition. While

sitting in the vehicle, Jackson saw Pernice attack Coleman and was himself struck on the head, causing him to collapse onto the steering wheel. Fearing he was going to be struck again, Jackson retrieved his gun from under the front seat, stuck it out the door of the Jeep Cherokee, and fired, causing Sang Duk Lee to disappear from Jackson's sight. Jackson and Coleman then drove away from the gas station. Jackson's testimony that he remained in the vehicle and fired his weapon through the vehicle's open door or window at someone who had struck him while he was in the vehicle and who he believed was preparing to strike him again was the "slight evidence" necessary to authorize the trial court giving a jury charge on the defense of habitation upon request. While counsel's failure to request an instruction constitutes deficient performance, it does not constitute ineffective assistance of counsel in light of the evidence against Jackson since there does not exist a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. *Pruitt v. State*, supra, 282 Ga. 30 (4). A disinterested observer testified that the person who shot Sang Duk Lee was standing outside the Jeep Cherokee, the victim was shot multiple times, and witnesses who ran to the fallen victims once the shooters left testified the victims were unarmed. In light of the evidence that Jackson exited his vehicle and repeatedly shot an unarmed man, there is no reasonable probability that instructing the jury on the law of defense of habitation would have resulted in a different outcome.

7. Labeling it hearsay that did not contain "sufficient indications of reliability" and "convincing elements of trustworthiness," the trial court declined to permit two witnesses to testify about statements purportedly made by the victims to the witnesses in which the victims admitted having had a confrontation with appellants the night before they were shot and having removed the electric utility meter from Coleman's home. Coleman contends the testimony was critical to his defense and therefore admissible pursuant to *Chambers v. Mississippi*, 410 U. S. 284, 302 (93 SC 1038, 35 LE2d 297) (1973), because it demonstrated the violence perpetrated by the victims against Coleman just hours before the shootings and it established the reasonableness of Coleman's fear of the victims.

In *Chambers*, the United States Supreme Court determined that a defendant's right to a trial meeting the standards of due process is violated when the trial court refuses to admit hearsay testimony which is critical to the defense and bears "persuasive assurances of trustworthiness. . . ." Id. In *Turner v. State*, 267 Ga. 149, 154 (476 SE2d 252) (1996), we advised trial courts faced with such an evidentiary question to analyze the matter as if the hearsay evidence were proffered under the "necessity" exception found in OCGA § 24-3-1 (b),

and we instructed attorneys seeking the admission of hearsay under due process grounds to make a proffer thoroughly setting out the reliability and necessity of the hearsay. "Whether the testimony has particularized guarantees of trustworthiness is a matter left to the trial court's discretion and is not disturbed absent a showing of an abuse of that discretion." *Wright v. State*, 285 Ga. 57 (3) (673 SE2d 249) (2009).

Defense counsel asserted that the persons who would testify to the utterances purportedly made by the victims were friends of the victims who reported the utterances to police shortly after the victims were killed. Such a presentation is insufficient to authorize the admission of hearsay pursuant to the necessity exception since there is no showing of the required special relationship between the deceased declarants and the proffered witnesses. See, e.g., *Matthews v. State*, 284 Ga. 819 (2) (672 SE2d 633) (2009) (proffered witnesses were confidants of the victim for several years and knew matters of a personal nature); *Culmer v. State*, 282 Ga. 330 (2) (647 SE2d 30) (2007) (proffered witness and deceased declarant were close enough to share the intimate details of their lives). As it is error to admit hearsay under the necessity exception in the absence of a showing that the deceased declarant placed great confidence in and turned for help to the proffered witness (*Brooks v. State*, 281 Ga. 514 (4) (640 SE2d 280) (2007)), the trial court did not err when it declined to admit the hearsay after finding the party seeking to use the hearsay had not made the necessary proffer.

8. Coleman also takes issue with the trial court's refusal to permit an employee of Georgia Power Company to testify that she saw on her computer screen a particular entry which reflected that a work order had issued for Coleman's address because there had been a disruption in electrical service to Coleman's home the night before the victims were killed, and that it had been reported to the power company that the electric meter had been disconnected. The employee was unable to again retrieve the entry on her computer screen and neither a computer printout nor the work order itself was proffered. Coleman views the testimony of the power company's employee as supportive of his position that the victims removed the electric meter from Coleman's house. The trial court ruled that the employee's recollection of the content of the computer screen was hearsay that was inadmissible due to insufficient indications of reliability and elements of trustworthiness. Even assuming the trial court's ruling was error, it does not constitute reversible error since there was other evidence that the electric meter had been removed from the house the night before the victims were killed and the power company's data did not identify the persons who had removed the meter.

9. Coleman sees error in the admission into evidence of a photograph of his girlfriend showing facial injuries purportedly inflicted by Coleman. The State was permitted to introduce the photograph into evidence over objection on cross-examination, in an effort to impeach Coleman's testimony that he and Jackson had become close because, among other things, they enjoyed conversing with and "respecting women." On cross-examination, the assistant district attorney asked appellant whether he repeatedly had struck the mother of his child in 2002 and exhibited the photograph to the jury following its admission. Coleman acknowledged the woman had suffered the injuries depicted in the photo but denied he had struck her. The photographed woman did not testify and no certified copy of a conviction resulting from the injuries depicted was admitted into evidence.

When a defendant elects to testify at his trial, he is subject to examination and cross-examination as any other witness, "except that no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue." OCGA § 24-9-20 (b) (2004).[3] The rule that evidence of a criminal defendant's bad character or prior convictions is generally inadmissible is not applicable when such evidence is used to disprove facts to which the defendant testified, even if the evidence incidentally places the defendant's character in issue. *Leary v. State*, 256 Ga. App. 639 (2) (569 SE2d 593) (2002). However, "[i]n the impeachment situation, the State may introduce evidence reflecting negatively on the defendant's character only insofar as that evidence proves the falsity of specific testimony of the defendant." *Porter v. State*, 254 Ga. 388 (2) (330 SE2d 94) (1985). While the photograph was used in an attempt to prove the falsity of Coleman's testimony that he was respectful of women, the photo was never identified by a witness as depicting injuries inflicted by Coleman, and the State never introduced a certified copy of any conviction resulting from charges lodged against appellant as a result of the injuries depicted in the photo. In the absence of evidence connecting Coleman to the injuries depicted in the photo, the photo was not appropriate impeachment evidence and the trial court erred in admitting it. However, in light of the eyewitness testimony identifying Coleman as the person who shot Pernice multiple times while Pernice lay on the ground partially paralyzed, it is highly probable that the erroneous admission of the photograph into evidence did not contribute to the

---

[3] OCGA § 24-9-20 (b) was amended in 2005 and now provides that a criminal defendant who testifies in his or her own behalf is subject to examination and cross-examination as is any other witness. The amended version is applicable to trials commencing on or after July 1, 2005, and therefore was not applicable to appellant's 2004 trial.

jury's verdict and the judgment of conviction entered against Coleman, making the error harmless. *Harris v. State*, 279 Ga. 522, 527 (615 SE2d 532) (2005).

10. Coleman maintains the trial court erred when it denied his motion to sever the drug offenses from the offenses arising out of the homicides. The drug possession charges were the result of a search of the vehicle appellants abandoned as they fled pursuing deputies shortly before appellants were arrested. The trial court did not err when it refused to sever the charges inasmuch as the drug charges were a circumstance of the arrest for the homicides for which appellants were tried. *Roundtree v. State*, 270 Ga. 504 (3) (511 SE2d 190) (1999).

11. Appellant Coleman sees error in the trial court's refusal to permit Coleman to present evidence of the victims' reputation for violence and of prior acts of violence purportedly committed by the victims against third parties.

Generally, a victim's character is not relevant or admissible in a murder trial "for it is the same offense to kill a bad person as it is to kill a good person." (Punctuation omitted.) *Brown v. State*, 270 Ga. 601 (2) (512 SE2d 260) (1999). However, a victim's prior violent acts against third parties are admissible where a defendant follows the procedural requirements for introducing such evidence, establishes the existence of the prior acts by competent evidence, and presents a legitimate claim of justification by showing that the victim was the aggressor, the victim assaulted the defendant, and the defendant was trying to defend himself. *Laster v. State*, 268 Ga. 172 (2) (486 SE2d 153) (1997). Even if we were to assume Coleman presented a legitimate claim of justification by showing that he was defending himself from the assault perpetrated by Pernice as the aggressor, we would affirm the trial court's decision to keep out evidence of the victim's prior violent acts against third parties because the prior violent acts Coleman established by competent evidence were acts perpetrated by Lee, and Coleman was acquitted of the charges stemming from Lee's death. Accordingly, Coleman suffered no harm from the trial court's ruling.

*Judgment affirmed in part and reversed in part in Case No. S09A1144. Judgment affirmed in part, reversed in part, and vacated in part, and case remanded for resentencing in Case No. S09A1922. All the Justices concur.*

DECIDED NOVEMBER 9, 2009 —
RECONSIDERATION DENIED DECEMBER 15, 2009.

*Garland, Samuel & Loeb, William C. Lea*, for appellant (case no. S09A1144).

*William J. Mason*, for appellant (case no. S09A1922).
*Julia F. Slater, District Attorney, Kristy W. Dugan, Assistant District Attorney, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.