**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**July 13, 2012**

# In the Court of Appeals of Georgia

A12A0744. MAYS v. THE STATE.

PHIPPS, Presiding Judge.

Tiffany Mays appeals the denial of her motion for new trial following her convictions for aggravated battery, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. She asserts claims of error concerning the effectiveness of trial counsel, the court's failure to give a particular jury instruction, and the admissibility of a statement she allegedly made to police. Finding that the challenges are without merit, we affirm.

The evidence, construed in favor of the verdict,[1] showed the following. On August 17, 2008, Shante Rogers was riding in a vehicle with two other women when she had an "altercation" with someone on the phone; there was evidence that Rogers

---

[1] See *Futch v. State*, 286 Ga. 378, 379 (687 SE2d 805) (2010).

was on the phone with Mays. The driver drove the vehicle to Mays's residence, and parked across the street. Mays and two other women were standing on the front porch or on a sidewalk in front of the porch.

Rogers testified that as soon as she got out of the car, Mays started shooting. Rogers was shot and "hit the ground"; she did not "make it across the street." Rogers testified that she and her companions did not possess any weapons. A trauma surgeon who treated Rogers on the date of the shooting testified that a bullet had severed Rogers's spinal cord, causing permanent paralysis.

One of Rogers's companions testified that Rogers did not enter upon Mays's property, that "before anybody really got out of the car, [Mays] was just walking out into the grass"; Mays started shooting, and Rogers fell about one foot behind the vehicle she had just exited, yelling that she had been shot. Mays was "still in the yard . . .standing in the yard . . . waving the gun and the other two girls . . . walked out in the grass with her."

Mays's sister, who was present during the incident, testified that Rogers entered Mays's yard carrying a metal pole in her hand, yelling "[W]hat you going to do. I'm here. I'm here. . . ," while Rogers's companions stayed in the street. She testified that Mays was on her grass, a few feet from her front porch. Mays's sister

2

was standing inside the doorway and told Mays to come in the house, but then shots were fired. Rogers and Mays were approximately 15 to 18 feet apart when Mays shot Rogers.

Mays testified that she was outside, in her front yard, when Rogers and her companions "pulled up." Rogers confronted Mays in the yard and threatened her with a "short type of [metal] pole," "trying to get [Mays] to engage in a fight." Mays testified that she did not want to fight Rogers, and that she asked Rogers "to please leave my yard." Mays testified that she feared for her life, and that she felt that she had to shoot Rogers because she did not know what Rogers and her companions were going to do to her. Shortly after the shooting, the police arrived and took Mays into custody.

1. Before trial, Mays's counsel submitted a written request to charge the jury on, inter alia, the use of force in defense of habitation. The trial court declined to give the requested charge, stating that there had been no intrusion on Mays's habitation and that Mays, a convicted felon, "was unlawfully in possession of a firearm." Mays contends that trial counsel was ineffective because he failed to object to the court's refusal to give the charge. The argument presents no basis for reversal.

3

"In order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that counsel performed deficiently and that the deficient performance prejudiced the defendant such that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different."[2] Mays was required to establish deficient performance by showing that the failure of defense counsel to object to the court's failure to give his requested charge fell below an objective standard of reasonableness.[3] In examining whether Mays met this standard, we keep in mind that a request to charge the jury is appropriate where there is any evidence, however slight, on which to predicate it.[4] "On appellate review of the trial court's ruling, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[5]

---

[2] *Coleman v. State*, 286 Ga. 291, 297 (6) (687 SE2d 427) (2009) (citation omitted).

[3] See id.; *Bynum v. State*, _ Ga. App. _ (1) (b) (Case No. A11A1642, decided March 7, 2012).

[4] *Coleman*, supra.

[5] *Strickland v. State*, 311 Ga. App. 400, 402 (2) (715 SE2d 798) (2011) (citation and footnote omitted).

4

OCGA § 16-3-23, which sets out the defense of use of force in defense of habitation, authorizes, in pertinent part, the use of force reasonably believed necessary to prevent another's unlawful entry into or attack upon a habitation, and the use of force which is intended or likely to cause death or great bodily harm only if:

> (1) [t]he entry is made or attempted in a violent and tumultuous manner and [the defendant] reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person [in the habitation] and that such force is necessary to prevent the assault or offer of personal violence; . . . or (3) [t]he person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony.[6]

The statute authorizes, in pertinent part, the use of deadly force to prevent or terminate a person's unlawful *entry into or attack upon the habitation*.[7] "Habitation" is statutorily defined as "any dwelling, motor vehicle, or place of business."[8] Where there is no evidence that the victim was attempting to enter or attack (or did enter or

---

[6] *Coleman*, supra.

[7] OCGA § 16-3-23 (1).

[8] OCGA § 16-3-24.1.

5

attack) the defendant's habitation at the time he was injured by the defendant, the defense of use of force in defense of habitation is not available.[9]

Mays testified that she and Rogers were in her front yard when she shot her. So, Mays's own testimony placed both parties in the yard, outside the dwelling, at the time of the shooting. There was no evidence that Rogers attempted to enter Mays's dwelling. Instead, by Mays's and her sister's testimony, Rogers was attempting to engage Mays in a fight at a time when Mays was outside the dwelling, in her front yard. Accordingly, OCGA § 16-3-23 was unavailable to Mays as a defense.[10] And, because the testimony did not provide the slight evidence necessary to support a charge on the use of force in defense of habitation, trial counsel did not perform deficiently in failing to object to the court's ruling. Thus, the trial court did not err in determining that Mays did not carry her burden of proof on her claim of ineffective assistance of counsel.[11]

Notably, Mays asserts that her counsel was ineffective because he acquiesced when the trial court stated an improper basis for refusing to give the charge – namely,

---

[9] *Coleman*, supra at 298 (6).

[10] See id. at 298 (6) (a).

[11] Id.; *Darden v. State*, 233 Ga. App. 353, 354 (1) (504 SE2d 256) (1998).

6

that Mays could not avail herself of OCGA § 16-3-23 because she was a convicted felon.[12] Mays is correct that her status as a convicted felon did not preclude her from raising an affirmative defense pursuant to OCGA § 16-3-23.[13] But the court also based its decision on the lack of evidence to support the charge. As discussed above, there was no evidence that Mays entered or attempted to enter Mays's dwelling so as

---

[12] See *State v. Burks*, 285 Ga. 781, 782-783 (1) (684 SE2d 269) (2009) (explaining that OCGA § 16-3-24.2 provides statutory immunity for a person using force that arose in defense of habitation in accordance with OCGA § 16-3-23, unless in the use of deadly force such person uses a weapon the carrying of which is unlawful by such person under OCGA § 16-11-120 et seq., and that OCGA § 16-11-131 criminalizes the possession of a firearm by a convicted felon).

[13] See *Burks*, supra at 782-783 (1), n. 3 (while a convicted felon in possession of a weapon cannot as a matter of law benefit from the *pretrial immunity* statute (OCGA § 16-3-24.2), he is not precluded from raising in further proceedings below the *affirmative defense* of justification set out in OCGA § 16-3-23).

7

to support the giving of the charge.[14] Thus, counsel did not perform deficiently by failing to object to the court's refusal to give the charge.[15]

Moreover, Mays has failed to demonstrate prejudice. The court thoroughly instructed the jury on the law regarding self-defense and justification, and included instructions that: the state bore the burden of disproving self-defense beyond a reasonable doubt; a person is justified in using force against another to the extent that she reasonably believes that such force is necessary to defend herself against the other's imminent use of unlawful force; a person is justified in using force likely to cause death or great bodily harm only if that person reasonably believes that such force is necessary to prevent death or great bodily harm to herself or to prevent the commission of a forcible felony; aggravated assault is a forcible felony; there need

---

[14] See *Darden*, supra (court did not err in failing to charge the jury on the use of force in defense of habitation where victim was not attempting to enter appellant's house at the time appellant stepped outside and shot him; appellant had stated that victim was standing at the corner of her house, not at her door, when she fired the gun); *Harvard v. State*, 162 Ga. App. 218, 219 (3) (290 SE2d 202) (1982) (court did not err in refusing to charge the jury on the use of force in defense of habitation where there was no evidence that the victim was attempting to force entry into appellant's habitation before appellant shot him; instead, appellant testified that the victim stood outside and called to him to come out).

[15] *Coleman*, supra; see generally *Scott v. State*, 290 Ga. 883, 889 (7) (a) (725 SE2d 305) (2012) (counsel's failure to make a meritless objection is not evidence of ineffective assistance).

not be an actual assault made upon the defendant for the use of deadly force to be justified; and threats accompanied by menaces may be sufficient to arouse a reasonable belief that one is in imminent danger of great bodily injury or that a forcible felony is about to be committed. The court also specifically instructed the jury that "[o]ne who is not the aggressor is not required to retreat before being justified in using such force as is necessary for personal defense, or using force that is likely to cause death or great bodily harm if one has reason to believe that such force is necessary to prevent death or great bodily harm to one's self or to prevent the commission of a forcible felony." Furthermore, as set out in detail above, the evidence of Mays's guilt was overwhelming.

Under the circumstances, there does not exist a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different.[16]

---

[16] *Coleman*, supra at 299 (6) (b); see generally *McKee v. State*, 280 Ga. 755, 756 (2) (632 SE2d 636) (2006) (no reversible error in court's refusal to give appellant's request to charge on the use of force in defense of habitation where the court charged the jury on self-defense and justifiable homicide and evidence of his guilt was overwhelming).

2. Mays contends that the trial court erred in failing to charge the jury on the definition of "malicious" in connection with the charge of aggravated battery.[17]

Malice is an element of the offense of aggravated battery.[18] "Malicious," as applied to aggravated battery, "'has such obvious significance and common understanding that there is no need to define it in the jury charge.'"[19] Here, the trial court charged the jury on the elements of aggravated battery by reading the statute[20] nearly verbatim. Thus, the trial court did not err in this regard.[21]

3. On appeal, Mays contends that the trial court erred in allowing into evidence a statement she made to a police officer at the police station, without counsel present, after she had indicated her desire to be represented by counsel. This argument presents no basis for reversal.

---

[17] OCGA § 16-5-24 (a) pertinently provides that a person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof.

[18] Id.

[19] *Blanch v. State*, 293 Ga. App. 750, 751 (2) (667 SE2d 925) (2008) (citation omitted); *Ellis v. State*, 245 Ga. App. 807, 808 (539 SE2d 184) (2000).

[20] OCGA § 16-5-24 (a).

[21] *Blanch*, supra.

At the hearing on the motion to suppress, defense counsel argued that Mays had not made any statement at the police station. Noting that defense counsel seemed to be making inconsistent arguments, the court asked counsel to clarify his basis for seeking to exclude the statement. Defense counsel stated that his position was that Mays had "made no statement at all."

Finding that voluntariness was not at issue in Mays's motion, and that the issue of whether Mays had made the statement at all was a fact issue, the court ruled that the police officer would be permitted to testify about the alleged statement. After the court's ruling, defense counsel added that regardless of whether Mays had made the statement, it was not admissible because she had invoked her right to counsel. Then, when the trial court began discussing Mays's assertion of the right to counsel, defense counsel stated that Mays had "understood her rights" and he reiterated the defense's position that Mays had made no statement at all. Thus, Mays has not shown that the argument asserted on appeal was preserved.[22]

---

[22] See generally *Whitehead v. State*, 287 Ga. 242, 246 (2) (695 SE2d 255) (2010).

In any event, the argument is without merit. Three fundamental principles must be followed when conducting an appellate review of a motion to suppress:[23]

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[24]

Mays cites *Edwards v. Arizona*[25] for the principle that an accused, having expressed her desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to her, unless the accused has herself initiated further communication, exchanges, or conversations with the police.[26] She asserts that she did not validly waive her right to

---

[23] *Miller v. State*, 288 Ga. 286 (1) (702 SE2d 888) (2010).

[24] Id.

[25] 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981).

[26] Id. at 484-485 (II); *Brady v. State*, 259 Ga. 573, 576 (1) (385 SE2d 653) (1989).

counsel by responding to further officer-initiated interrogation, even if the officer did again advise her of her rights.[27]

The *Edwards* rule "embodies two distinct inquiries: first, whether the accused actually invoked [her] right to counsel; and, second, if such right was invoked, whether the accused thereafter initiated further discussions with the police, and knowingly and intelligently waived the right that [she] had invoked."[28]

Viewed in a light favorable to the trial court's findings and judgment on the motion to suppress,[29] the evidence showed that before Mays was interviewed at the police station, she was advised of her *Miranda* rights, then she read, initialed and signed a form advising her of those rights. The form stated, inter alia, that Mays had the right to have an attorney present during questioning. Mays signed the waiver section of the form, agreeing to speak to the police officer. Mays testified that she initialed and signed the form and that she understood her rights, including the provisions concerning the right to have counsel present during questioning, but that she refused to make a statement to police. She testified further that she told police

---

[27] See *Brady*, supra.

[28] Id. (citation omitted).

[29] *Miller*, supra.

13

officers before she was interviewed at the police station that she wanted to talk to an attorney. In contrast, the police officer who interviewed Mays at the police station regarding the shooting (which officer was also present at Mays's house after the shooting) testified that Mays did not ask for counsel, did not indicate that she wanted to end the questioning and obtain counsel, and voluntarily stated to him that someone else had fired the gun. At the suppression hearing and at trial, Mays denied that she had made any statement at the police station about the shooting.

In this case, there was evidence that Mays had not actually invoked her right to counsel.[30] For instance, she signed a document in which she waived several rights, including the right to counsel. And although Mays claimed she later asked for counsel (a point contradicted by the officer), the court was not required to believe her testimony.[31] Moreover, the issue of whether Mays made or did not make a verbal statement to police regarding the shooting was also disputed and was, as the court stated, an issue of fact. Inasmuch as no error of law appears in the record, and the trial

---

[30] Compare *Edwards*, supra.

[31] See *State v. Hester*, 268 Ga. App. 501, 504 (602 SE2d 271) (2004) (the trier of fact is not obligated to believe a witness, and may accept or reject any portion of the testimony).

14

court's ruling was based on the credibility of the witnesses, Mays has presented no basis for reversal.[32]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[32] Id.