306 Ga. 153
FINAL COPY

S19A0360.  SWANSON v. THE STATE.

WARREN, Justice.

A jury found Sean Swanson guilty of felony murder, and of the predicate felony of sale of marijuana, in the shooting death of Noel Reed.  On appeal, Swanson contends that his trial counsel was ineffective for failing to request a jury charge on use of force in defense of habitation and for withdrawing a request to charge the jury on voluntary manslaughter.  Based on the facts and circumstances of this case, we conclude that Swanson's trial counsel rendered constitutionally ineffective assistance by failing to request a jury charge on use of force in defense of habitation and therefore reverse Swanson's felony murder conviction.[1]

---

[1] The killing occurred on August 19, 2016.  On September 28, 2016, a Gwinnett County grand jury indicted Swanson (and his friend Tia Coleman) for sale of marijuana and felony murder predicated on that sale.  At the conclusion of a trial held from June 12-15, 2017, a jury found Swanson guilty of both counts.  The trial court sentenced Swanson to serve life in prison for felony murder and merged the sale-of-marijuana count for sentencing

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed the following. On August 19, 2016, Swanson's close friend, Tia Coleman, received a call from an acquaintance asking if Coleman would sell marijuana to Noel Reed. Swanson and Coleman arranged a meeting to sell a half-pound of marijuana, plus an ounce, to Reed at an apartment complex in Gwinnett County. Swanson drove his red car to the apartment complex; Coleman and three other friends were in the vehicle with him. Swanson parked his car to wait on Reed, who arrived shortly thereafter and approached Swanson's car on foot. At some point during the encounter, Reed pulled out an Intratec 9-millimeter handgun (more commonly known as a TEC-9); Swanson then pulled out his own Sig Sauer 9-millimeter pistol and, from the driver's seat, shot Reed twice, killing him. Before driving out of the apartment

purposes. Swanson filed a timely motion for new trial, which was later amended through new counsel. Following a March 23, 2018 hearing, the trial court denied the motion, as amended, on September 13, 2018. Swanson filed a timely notice of appeal on September 20, 2018. The appeal was docketed in this Court to the term beginning in December 2018 and submitted for a decision on the briefs.

complex, Swanson got out of his car and took back the bag of marijuana (which was lying on the ground) from near Reed's body.

Two residents of the apartment complex called 911 after they heard multiple gunshots and saw someone get out of a red car and take the bag that was lying next to Reed before driving away. Officers stopped Swanson's car soon afterward and arrested him. From Swanson's car, officers recovered a large bag of marijuana, a Sig Sauer 9-millimeter pistol, and a .460 Smith & Wesson Magnum revolver. From near Reed's body, officers recovered a TEC-9 pistol, a backpack, and two 9-millimeter shell casings that matched the bullets in the pistol found in Swanson's car.

At trial, Coleman testified for the State in exchange for testimonial immunity. She testified that when Reed arrived for the sale, Swanson got out of the car, the two men spoke briefly, and then Swanson got back in the driver's seat of the car. Reed was standing outside the car near the rear tire on the driver's side and began rummaging through a backpack that he was carrying. Coleman testified that she tried to warn Swanson and "screamed [Swanson's]

3

name" when she saw Reed holding a gun; Reed possibly "snatched" the bag of marijuana at that time, though Coleman was not sure of this detail; and Swanson "shook violently before he turned around, he saw the gun and out of instinct, he pulled out his gun and shot [Reed] twice." Coleman also testified that she thought Reed "took a few steps back" before Swanson shot him, and that she feared that Reed would shoot Swanson and the other vehicle occupants. Coleman further testified that after they drove away, Swanson told her to tell the police that Coleman was selling the marijuana to Reed, that Reed tried to rob her, and that Swanson shot Reed to defend Coleman; Swanson also relayed this story when police interviewed him on the night of Reed's killing.

After the State finished presenting its case-in-chief, Swanson testified in his own defense. According to Swanson, he was sitting in his car with his door open and was using an application on his phone as Reed approached. Reed asked if Coleman was in the car and then walked toward the back, driver's-side tire while Swanson was still looking at his phone. Suddenly, one of Swanson's friends

4

said "yo, watch out, he has a gun," and when Swanson "look[ed] up," Reed already had a gun pointing at Swanson's chest. Reed told Swanson to "run it, I need everything or I'm going to shoot someone," and then reached in and "snatched" the bag of marijuana while pointing the gun at Swanson. Swanson testified, "I was scared. I was terrified. I didn't want to die that day," and also that he thought Reed may hurt the other vehicle occupants. Swanson testified that even after Reed took the marijuana, Reed did not leave and "still has the gun pointed at me wanting more stuff, and he — he — for a second, looked away toward the apartment area" as he took a step back, and that is when Swanson retrieved his own pistol from between the driver's seat and the console and fired three shots in "quick succession," first a warning shot and then two shots that struck Reed, who was only a few feet away. With respect to timing, Swanson testified that Reed pointing a gun at Swanson, reaching into Swanson's car to grab the marijuana, and saying "run it[,] I want everything or I'm shooting" happened "simultaneously," and that the entire interaction — starting with Reed walking up to

5

Swanson's car — "happened fast, real fast."  Swanson does not contest the legal sufficiency of the evidence supporting his conviction.  Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Swanson guilty beyond a reasonable doubt of the crimes for which the jury found him guilty.  See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2.     Swanson contends that his trial counsel was ineffective for failing to request a jury charge on use of force in defense of habitation.  For the reasons explained below, we agree.

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant.  *Strickland v. Washington*, 466 U. S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010).  To satisfy the deficiency prong, a

6

defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

To authorize a jury instruction, there need only be slight evidence at trial supporting the theory of the charge. *State v. Newman*, 305 Ga. __ (__ SE2d __) (2019). Under Georgia law, "[a] person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such

threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation." OCGA § 16-3-23. However, "in the use of force which is intended or likely to cause death or great bodily harm" a person is justified "only if":

> (1) The entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence;
> (2) That force is used against another person who is not a member of the family or household and who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using such force knew or had reason to believe that an unlawful and forcible entry occurred; or
> (3) The person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony.

Id. "Habitation," as used in OCGA § 16-3-23, includes "any dwelling, motor vehicle, or place of business." See OCGA § 16-3-24.1.

At trial, Swanson's counsel did not request, and the trial court did not provide, a jury instruction on use of force in defense of habitation under OCGA § 16-3-23. Counsel did request, and the

8

trial court did provide, a jury instruction on use of force in defense of self or others under OCGA § 16-3-21. However, the statute pertaining to the justification of use of force in defense of self or others expressly provides, and the jury was accordingly charged, that "[a] person is not justified in using [such] force . . . if he . . . [i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony," OCGA § 16-3-21 (b) (2), and Swanson admitted to committing a felony (sale of marijuana) when he testified at trial. Notably, the defense-of-habitation statute contains no such limitation. See OCGA § 16-3-23.

(a) *Deficiency prong.* Swanson contends that the evidence presented at trial included at least slight evidence that would have supported a jury instruction on defense of habitation. Indeed, the evidence was undisputed that Swanson was inside his car when he shot at Reed, who was pointing a gun at Swanson and (Swanson argues) was in the process of committing an armed robbery against Swanson and the passengers inside Swanson's car. To that end, Swanson testified that Reed — the aggressor — brandished a

9

firearm, threatened Swanson and the other passengers in the car, and reached into Swanson's car to steal marijuana from him. Swanson testified that he feared that Reed, who kept his gun pointed at Swanson as Reed stepped back, was "wanting more stuff," prompting Swanson — who remained in his car — to shoot. Because the defense-of-habitation statute concerns entry "made or attempted in a violent and tumultuous manner . . . for the purpose of assaulting or offering personal violence to any person dwelling or being therein" and also entry "made or attempted for the purpose of committing a felony therein" — the situation Swanson argues he was in at the time he shot Reed — Swanson contends that his counsel was deficient when he failed to request a jury charge on defense of habitation. See OCGA § 16-3-23 (1), (3).[2]

---

[2] Citing *Coleman v. State*, 286 Ga. 291, 297 (687 SE2d 427) (2009), Swanson also reasons that because OCGA § 16-3-23 "speaks of an 'attack' and 'prevent[ing] and terminat[ing]' an entry or attack, the statute recognizes an ongoing attempt to unlawfully attack or enter." But *Coleman* does not appear to stand for that proposition, at least as Swanson portrays it, and the State does not meaningfully analyze the "attack" language in the first sentence of OCGA § 16-3-23. However, because we determine that the specific facts in this record constitute slight evidence of defense of habitation under OCGA § 16-3-23 (1) or (3), we need not address whether the "attack" language in OCGA

We agree. The evidence presented at trial and described above constituted at least slight evidence that Swanson acted in defense of habitation. Important to this conclusion is Swanson's testimony that Reed had—while pointing a gun at Swanson—threatened, "I need *everything* or I'm going to shoot someone" (emphasis supplied), and then reached *into* the car to "snatch" the bag of marijuana. Given Swanson's additional testimony that Reed continued to point a gun at a "terrified" Swanson and others in the car even after Reed took the marijuana, and that Reed "still ha[d] the gun pointed at me wanting more stuff," Swanson reasonably could have believed that Reed would again attempt entry into Swanson's car to "assault[ ] or offer[ ] personal violence" to the occupants of the car, or that Reed would again attempt entry to "commit[ ] a felony." OCGA § 16-3-23 (1), (3). Based on this evidentiary record, there was at least slight evidence supporting defense of habitation, and a jury instruction on that defense was therefore authorized.

---

§ 16-3-23 provides a separate basis for which slight evidence existed warranting an instruction on defense of habitation.

11

Moreover, given this record, a reasonable attorney would have pursued a justification defense on Swanson's behalf. And, indeed, Swanson's trial counsel *did* pursue such a defense. But the defense he elected to pursue — self-defense — was legally foreclosed, see OCGA § 16-3-21 (b) (2), and trial counsel essentially admitted at the hearing on Swanson's motion for new trial that he knew the jury legally could not apply a self-defense justification in Swanson's case, requested the instruction anyway, and sought instruction on no other defense.[3] These admissions were significant because there *was* a justification defense available that was not foreclosed as a matter of law: defense of habitation. Indeed, the statute governing defense of habitation, unlike that governing self-defense, does not contain an express exclusion for people using force while in the

---

[3] Specifically, at the hearing on Swanson's motion for new trial, trial counsel admitted that he knew that (a) selling marijuana was a felony; (b) a self-defense theory can be precluded as a matter of law if a defendant is involved in a felony at the time he uses force; (c) Swanson was engaged in the sale (or was at least a party to the sale) of marijuana when he shot Reed; and (d) trial counsel nonetheless sought a jury instruction on self-defense.

commission of a felony. Compare OCGA § 16-3-23 (defense of habitation) to OCGA § 16-3-21 (self-defense).[4]

We can identify no reasonable basis for an attorney failing to request a jury instruction on defense of habitation under OCGA § 16-3-23 under these circumstances. Yet trial counsel failed to do so here, and even admitted at Swanson's hearing on a motion for new trial that he did not request such a charge because at that time, he "did not know about" the statute defining "habitation" to mean a "motor vehicle"; that he "didn't realize" that "habitation was expanded to the point of dealing with a car"; and that "[i]t did not appear to" him "that use of force and defense of habitation applied."[5] And although decisions of counsel made based on a

---

[4] As noted above, Georgia law precludes justification by use of force in defense of self or others in cases where the person using that force is also involved in the commission of a felony. See OCGA § 16-3-21 (b) (2). If the General Assembly believes that same policy should apply to justification by use of force in defense of habitation, it is for that body, and not this Court, to pass a law stating as much.

[5] We note, however, that "it is the *conduct* of the lawyer, not his *thinking*, that we assess for reasonableness, even though the thinking of the lawyer may inform the reasonableness of his conduct." *Powell v. State*, 291 Ga. 743, 748 n.2 (733 SE2d 294) (2012) (emphasis in original).

13

misunderstanding of the law are not automatically deficient, see *State v. Patel*, 280 Ga. 181, 182-183 (626 SE2d 121) (2006); *Shields v. State*, 307 Ga. App. 830, 832-833 (706 SE2d 187) (2011), a defendant can carry his burden of showing deficiency if, under the circumstances, the challenged action cannot "'be considered a sound trial strategy.'" *Johnson v. State*, 286 Ga. 787, 791 (692 SE2d 575) (2010) (punctuation omitted) (quoting *Strickland*, 466 U. S. at 689). That is the case here, where reasonable trial counsel would not have made the same strategic decision if he properly understood the law. See *Shields*, 307 Ga. App. at 832-833. For these reasons, Swanson has met the burden of showing that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer*, 293 Ga. at 344; see also *Strickland*, 466 U. S. at 687-688.

This conclusion is consonant with relevant precedent. For example, in *Coleman v. State*, 286 Ga. 291 (687 SE2d 427) (2009), we concluded that one of the two co-defendants, Jackson, was entitled to a jury charge on defense of habitation and that his trial

14

counsel was deficient for failing to request it because Jackson testified that while he was sitting in the driver's seat of his co-defendant's car, someone struck him from outside the vehicle and, fearing he would be struck again, Jackson "retrieved his gun from under the front seat, stuck it out the door of the [vehicle], and fired." Id. at 298-299. There,

> Jackson's testimony that he remained in the vehicle and fired his weapon through the vehicle's open door or window at someone who had struck him while he was in the vehicle and who he believed was preparing to strike him again was the 'slight evidence' necessary to authorize

a jury charge on defense of habitation. Id. at 299.[6]

Similarly, in *Benham v. State*, 277 Ga. 516 (591 SE2d 824) (2004), we concluded that there was at least slight evidence

---

[6] In *Coleman*, the Court went on to conclude that co-defendant Jackson did not suffer prejudice from his counsel's deficient performance "in light of the evidence against Jackson" — and in particular, testimony from a "disinterested observer" whose testimony contradicted Jackson's. That testimony suggested that "Jackson exited his vehicle and repeatedly shot an unarmed man." See *Coleman*, 286 Ga. at 299. No such contradictory testimony exists in this case.

15

supporting the theory of defense of habitation and that counsel's failure to request a jury instruction was constitutionally deficient. In that case, witness testimony corroborated Benham's testimony that she sat in her car with her eight-year-old son in the front passenger seat when someone approached the driver's side window and began arguing with her. When the person outside the car reached into the driver-side window and struck Benham, she grabbed a box cutter and repeatedly slashed the assailant. Counsel argued that Benham's actions were a justifiable use of force in defense of self or others, but did not request a jury instruction on defense of habitation, and the jury returned a verdict of guilty on aggravated assault. Id. at 516-517. At Benham's hearing on a motion for new trial, trial counsel testified that she had strategic reasons for choosing not to request a charge on defense of habitation, including that she "wanted the jury to believe Benham was in fear for her safety and the safety of her children, not that she was merely protecting her vehicle." Id. at 517. On appeal, we concluded that Benham's trial counsel was deficient because it was "evident that

16

defense counsel failed to appreciate that the defense of habitation may have justified the use of deadly force in this case even if that amount of force was not necessarily required to repel [the victim's] attack." Id. As a result, "[i]n failing to adequately research and understand the defenses available to her client, defense counsel rendered assistance that fell below the minimum standard set forth in *Strickland.*" Id. at 517-518. We further explained that "[e]ven assuming that trial counsel in this case knowingly made the tactical decision to forego requesting a charge on defense of habitation, it is not a *reasonable* decision a competent attorney would have made under the same circumstances." Id. at 518 (emphasis in original).

Here, as in *Coleman*, Swanson's "testimony that he remained in the vehicle and fired his weapon through the vehicle's open door or window at someone who had" pointed a gun at him "while he was in the vehicle and who he believed was preparing to" rob and injure him was the type of evidence necessary to authorize a jury charge on defense of habitation. *Coleman*, 286 Ga. at 299. And just as in *Benham*, it is "evident that defense counsel failed to appreciate that

17

the defense of habitation may have justified the use of deadly force in this case." 277 Ga. at 517.

The State, however, advances a different argument. Relying on *Kendrick v. State*, 287 Ga. 676 (699 SE2d 302) (2010), the State contends that it is critical to evaluate "'the moment in time at which the defendant resorts to deadly force and the act being performed by the victim at that moment.'" Id. at 679 (quoting *Coleman*, 286 Ga. at 298).[7] According to the State, the evidence at Swanson's trial did not support the theory of defense of habitation because it showed that at the moment Swanson shot Reed, Reed had already reached into Swanson's car, taken the marijuana, and taken a "few steps away from" Swanson's car. Under this view, "'there is no evidence that the victim was attempting to enter or attack the habitation at the time he was injured by the defendant,'" and Swanson did "'not

---

[7] The State also argues, through the District Attorney's brief on appeal, that trial counsel was not deficient because Swanson did not testify that he "belie[ved] that he was defending his habitation." That argument discounts record evidence that would support a defense-of-habitation instruction, and ignores the possibility that Swanson's testimony could support such a charge even without referencing the phrase "defense of habitation."

18

use deadly force until the justification for the use of deadly force [was] over,'" meaning that "'the defense of habitation is not available.'" Id. at 679-680 (quoting *Coleman*, 286 Ga. at 298).

But the facts of *Kendrick* make that case inapposite. See *Kendrick*, 287 Ga. at 680 ("Under the facts of this case, there could be no reasonable belief that firing a pistol at the driver of another car while driving on the road was necessary to prevent or terminate the other's unlawful entry into or attack upon a motor vehicle.") (punctuation omitted).[8]  Unlike in *Kendrick*, we cannot say that the record in this case does not support a "reasonable belief" that force was "necessary to prevent or terminate the other's unlawful entry into or attack upon a motor vehicle." Id. at 680 (punctuation omitted).  Because the failure to request a jury instruction on defense of habitation was "objectively unreasonable . . . in the light

---

[8] *Kendrick* cites to the portion of *Coleman* where a defense-of-habitation charge was denied with respect to one of the two co-defendants in that case. But in *Coleman*, our determination that one of the two co-defendants was not entitled to a charge on defense of habitation was based on the co-defendant's own admission that he began shooting only *after* he and the victim were both outside of the vehicle and the victim was no longer attempting to enter it.  286 Ga. at 298.  That factual scenario is distinguishable from this case.

of prevailing professional norms," *Romer*, 293 Ga. at 344, counsel was constitutionally deficient under the circumstances. See *Coleman*, 286 Ga. at 298-299; *Benham*, 277 Ga. at 517-518.

(b) *Prejudice prong.* Having determined that Swanson's counsel performed deficiently, we must turn to the second prong of the *Strickland* analysis. To support his claim of prejudice, Swanson asserts that "it is reasonably probable that [the jury] would have accepted the substantial evidence that Noel Reed made an entry or attempted entry" in the manner required by OCGA § 16-3-23 (1), (3). We consider whether the record shows a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U. S. at 694.

We first look to the record evidence cutting against Swanson's prejudice arguments. The State contends that even if the jury had been charged on defense of habitation, it still would have returned a guilty verdict for felony murder. It reasons that the jury was charged on self-defense yet returned a guilty verdict, which shows that the jury already considered and rejected a similar (and even

20

"more applicable") justification defense.  The State also argues that even if slight evidence supported a theory of defense of habitation, that evidence was *so* slight that the jury would have rejected that defense even if it had been instructed on it.

We do not agree that these points are dispositive of the prejudice analysis here.  To the contrary, the record shows that there is a "probability sufficient to undermine confidence in the outcome" of Swanson's trial.  See *Strickland*, 466 U. S. at 694.

First, the State, in its closing argument, focused heavily on the inapplicability of a self-defense theory to the facts of Swanson's case.  As just one example, the State argued in closing: "Let that sink in. Not justified in using force if that person is committing a felony." Indeed, the State even conceded in closing that if Swanson had not been selling marijuana but had instead been "hanging out in the parking lot, Mr. Reed rolled up on them, put that gun to him and said run it, I'm robbing you, Mr. Swanson would have had every right to defend himself with deadly force."  But, argued the State, because Swanson was selling marijuana when he shot Reed, "What

21

you forfeit is your right to claim self-defense, to have a jury grant you justification." These aspects of the State's closing argument are significant not only because they capitalize on trial counsel's deficiency, see Division 2 (a) above, but also because they effectively concede that if a justification defense that was *not* precluded by law were available, then Swanson would have had a strong defense at trial. This supports the notion that there is a reasonable probability the jury would have returned a different verdict had it been instructed on defense of habitation.

Second, the record shows that the jury was paying close attention to the defense on which it was instructed, and that it carefully considered whether it could apply that defense in Swanson's case. To that end, the trial court charged the jury on self-defense, including an instruction — consistent with Georgia law — that "a person is not justified in using force if that person is attempting to commit, is committing, or is fleeing after the commission or attempted commission of a felony." During deliberations, the jury sent a note to the court asking: "GA law states

22

a person cannot claim self-defense while committing a felony.  Are we bound to this?  Y or N."  This note suggests that — at least at that point in their deliberations — the jury felt enough discomfort about their instructions that they asked the trial judge whether they were, in fact, legally bound to reject a self-defense claim if the evidence showed that Swanson was committing a felony when he shot Reed, even if the jury believed that Swanson was acting reasonably in defense of himself and the car's other occupants.  The judge's response to the jury, after consulting with the parties, was to re-charge the jury that it was "bound by these instructions," and the jury ultimately returned a guilty verdict on felony murder.  Given how closely the jury was paying attention to the self-defense theory on which it was actually instructed, and in light of the record evidence authorizing an instruction on a justification defense that did *not* contain an express statutory exclusion, it is reasonably probable that the jury would have returned a different verdict had it been instructed on defense of habitation.  Indeed, the question posed in the jury's note underscores the jury's apparent disquiet

23

with the unavailability of a self-defense theory for Swanson and dispels any question about whether a different result was reasonably probable had the jury been instructed on the available defense of defense of habitation.

Our conclusion that Swanson has demonstrated prejudice is consistent with our precedent. In *Benham*, for example, we concluded that the defendant was prejudiced by her counsel's failure to request a jury charge on defense of habitation because it was reasonably probable that the jury would have accepted the substantial evidence, which included witness testimony, that the victim "unlawfully entered Benham's car in a violent and tumultuous manner for the purpose of offering personal violence to the occupants." 277 Ga. at 517-518. And although our appellate courts have concluded in other cases that a defendant was not prejudiced by counsel's failure to request a jury charge on defense of habitation, those cases are generally distinguishable because, for example, the record showed the defendant used force against a victim who was no longer attempting to enter a habitation, see

*Barrett v. State*, 292 Ga. 160, 178-180 (733 SE2d 304) (2012) (evidence showed that defendant was outside of residence when he shot unarmed victim, who posed no threat of re-entering the residence, in the back of the head, and an eyewitness testified that the defendant mercilessly beat the much smaller, unarmed victim); *Coleman*, 286 Ga. at 298-299 (evidence showed that defendant exited his vehicle, stood outside of it, and repeatedly shot unarmed victim who was no longer trying to enter vehicle), or that the jury was instructed on a viable justification defense that was not foreclosed by the defendant's theory of the case, see, e.g., *Hill v. State*, 290 Ga. 493, 500 (722 SE2d 708) (2012); *Mays v. State*, 317 Ga. App. 24, 28 (730 SE2d 651) (2012); *Smith v. State*, 309 Ga. App. 241, 249 (709 SE2d 823) (2011).

Here, by contrast, given the record evidence recounted above, the jury — having been instructed on defense of habitation, and after weighing the evidence and credibility of the witnesses — could have reasonably concluded that Swanson justifiably used deadly force in defense of habitation. See *Debelbot v. State*, 305 Ga. 534,

25

541-542 (826 SE2d 129) (2019) ("[I]n examining whether a defendant has shown *Strickland* prejudice, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done." (citing *Woodard v. State*, 296 Ga. 803, 810 n.5 (771 SE2d 362) (2015)). To be sure, there are some differences between Coleman's testimony and Swanson's, including about which passenger told Swanson to turn around because Reed was pointing a gun at him, and how exactly Reed obtained the bag of marijuana from Swanson's car. And Coleman's credibility must be viewed in light of the testimonial immunity the State offered her. Even so, Coleman's and Swanson's testimony aligned with respect to the core evidence presented at trial establishing that Reed pulled a TEC-9 handgun on Swanson and aimed it at Swanson (who was sitting with others in his car) before Swanson shot Reed. Moreover, Coleman's testimony that Reed "possibly" reached into the car to take the bag of marijuana, and her lack of certainty on that point, did not contradict Swanson's testimony that Reed in fact did so. We thus conclude that, even weighing the divergence in testimony and

26

witness credibility, it is reasonably probable that the jury would have returned a different verdict had it been properly instructed on defense of habitation.

In sum, when viewed as a whole, the record here shows that there is a reasonable probability that, but for counsel's deficient performance, the outcome of Swanson's trial would have been different. In other words, Swanson has established a "probability sufficient to undermine confidence in the outcome" in Swanson's trial. See *Strickland*, 466 U. S. at 694. Because we hold that counsel rendered constitutionally ineffective assistance in failing to seek a jury instruction on defense of habitation, Swanson's conviction for felony murder is reversed. Consequently, Swanson is entitled to a new trial.[9]

3. Swanson contends that his trial counsel was ineffective for withdrawing a request to charge the jury on voluntary manslaughter. Given that we have already reversed Swanson's

_____

[9] We note that if the State elects not to retry Swanson, then his guilty verdict for sale of marijuana will stand unmerged and require sentencing. See *Calloway v. State*, 303 Ga. 48, 49 (810 SE2d 105) (2018).

27

conviction for felony murder, however, we need not reach this enumeration of error. See, e.g., *Taylor v. State*, 297 Ga. 132, 136 (772 SE2d 630) (2015).

*Judgment reversed. All the Justices concur.*

Decided June 10, 2019.

Murder. Gwinnett Superior Court. Before Judge Hutchinson.

Juwayn Haddad, for appellant.

Daniel J. Porter, District Attorney, John A. Warr, Lee F. Tittsworth, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General,

<u>Vanessa T. Sassano, Assistant Attorney General</u>, for appellee.