**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 5, 2020**

# In the Court of Appeals of Georgia

A19A2091. DANMOND SLACK v. THE STATE.

REESE, Judge.

Danmond Slack appeals from an order of the Superior Court of Fulton County, which denied his amended motion for new trial after a jury found him guilty of aggravated child molestation, child molestation, and cruelty to children in the first degree.[1] Slack argues that the trial court abused its discretion in disallowing a proposed voir dire question and that his trial counsel was ineffective for failing to object to child hearsay and in failing to request a jury instruction on the statute of limitation with respect to the child-cruelty charge. For the reasons set forth infra, we affirm Slack's convictions for aggravated chid molestation and child molestation,

---

[1] See OCGA §§ 16-6-4 (c); 16-6-4 (a) (1); 16-5-70 (b).

reverse his conviction for first-degree cruelty to children, and remand the case with direction.

Viewed in the light most favorable to the verdict,[2] the evidence shows the following facts. The victim ("V. S.") was almost four years old when her mother married Slack in 1999. From 2001 until they separated in December 2003, the couple lived in an apartment in Alpharetta with V. S. and two children the couple had together. During this time period, Slack was alone with V. S. in the afternoon after she got home from school.

V. S. was 17 years old at the time of the trial in 2013. She testified that, once or twice a week in 2002 and 2003 (when she was seven or eight years old), Slack would rub her chest and force her to perform oral sex on him. On one occasion, he unsuccessfully tried to "stick his penis in [her] vagina[.]" V. S. further testified that Slack would have her take off her clothes and get on the bed and would then video-record her with her legs spread open.

V. S. testified that Slack told her not to tell anyone and that it was their "little secret[.]" When she got older and realized the abuse was not normal, she confided in her grandmother. The grandmother testified that the outcry occurred in January 2012

_____

[2] See *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014).

after V. S. had spent the weekend with her. According to the grandmother, V. S. said that Slack had touched her and that "he couldn't penetrate her so he would make her have oral sex."

The grandmother told V. S.'s father, who testified that he talked to V. S. the following day and then contacted the police. Roswell Police Department Detective Jennifer Bennett testified that she watched a live feed of a forensic interview with V. S. and then obtained an arrest warrant for Slack.

Slack was indicted in July 2013, and tried and found guilty the following month. The trial court sentenced Slack to 30 years' imprisonment for aggravated child molestation (Count 1), 20 years' imprisonment for chid molestation (Count 2, to run consecutively to Count 1), and 20 years (to serve 10) on the child cruelty charge (Count 3, to run consecutively to Count 2). After a hearing, the trial court denied Slack's amended motion for a new trial. This appeal followed.

"The conduct of voir dire is within the discretion of the trial court, and [its] rulings are proper absent some manifest abuse of his discretion."[3] "In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court

---

[3] *Meeks v. State*, 269 Ga. App. 836-837 (1) (605 SE2d 428) (2004) (citation and punctuation omitted).

upholds the trial court's factual findings unless they are clearly erroneous; we review the trial court's legal conclusions de novo."[4] With these guiding principles in mind, we turn now to Slack's claims of error.

1. Slack argues that the trial court abused its discretion in disallowing his proposed general voir dire question 31.

Slack proposed, inter alia, the following two general questions: "30. Would anyone here be shocked to hear a child under the age of 18 describe a sexual act? 31. Would anyone automatically believe a young child who could describe such acts?" The trial court allowed Slack's attorney to ask prospective jurors question 30, but disallowed question 31.

While trial judges have discretion to oversee jury selection, "the Supreme Court of the United States has held that due process requires that voir dire be sufficient to allow the parties and the trial court to elicit juror bias."[5] "OCGA § 15-12-133 allows

---

[4] *Wright v. State*, 319 Ga. App. 723, 736 (5) (738 SE2d 310) (2013).

[5] *Ellington v. State*, 292 Ga. 109, 124 (7) (b) (735 SE2d 736) (2012), disapproved in part on other grounds by *Willis v. State*, 304 Ga. 686, 706 (11) (a), n. 3 (820 SE2d 640) (2018).

voir dire questions beyond those that the Constitution would require allowing."[6] That statute provides in part:

> In all criminal cases, both the state and the accused shall have the right to an individual examination of each prospective juror from which the jury is to be selected prior to interposing a challenge. . . . In the examination, the counsel for either party shall have the right to inquire of the individual prospective jurors examined touching any matter or thing which would illustrate any interest of the prospective juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the prospective juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the prospective juror might have respecting the subject matter of the action or the counsel or parties thereto, and the religious, social, and fraternal connections of the prospective juror.

As the reviewing court, we give substantial deference to the decisions made by trial judges, in part because "the line between permissible inquiry into 'prejudice' (a juror's fixed opinion that a certain result should automatically follow from some fact, regardless of other facts or legal instructions) and impermissible questions of 'pre-judgment' (speculation about or commitment to the appropriate result based on hypothesized facts) can be hazy."[7]

---

[6] *Ellington*, 292 Ga. at 125 (7) (b).

[7] *Thomas v. State*, 296 Ga. 485, 489-490 (2) (769 SE2d 82) (2015).

5

In this case, after administering the voir dire oath, the trial court asked questions to identify any prospective jurors who had "any prejudice or bias" against Slack; whose minds were not "perfectly impartial between the State and [Slack]"; who had a friend or family member or knew a child who had been the victim of sexual assault; who had counseled victims of sexual abuse or had someone confide in them that the person was the victim of a sexual assault; or who had worked with children in any capacity.

The court also explained at length the need for jurors to be able to set aside any "preconceived notion[s]" and for the parties to discover any "inclination, leaning or bias that an individual juror has concerning the subject of the case, counsel or the parties[.]" The court inquired as to whether any jurors felt that they could not do these things. At one point during the individual questioning, the court reminded the prospective jurors that the questions were "designed to see if you can . . . listen to the evidence as it's presented in this case." The court continued: "The inquiry is whether you can follow your oath as a juror which would be to listen to all of the evidence presented and the law that the Court gives you and make a determination based on the evidence that is presented during the case, the law that I give you, and then reach a verdict after you've heard the evidence and the law[.]"

Additionally, during its general voir dire questions, the State sought to identify jurors who felt that, due to the "nature of the charges[,]" they could not render a "fair and impartial" decision based upon the evidence presented in the courtroom. Besides question 30, quoted above, the defense was also allowed to ask, inter alia, whether knowing that the alleged victim was between the ages of six and eight, anyone felt he or she could not be fair and impartial.

Based upon the general voir dire questions posed to the jury, we conclude that the trial court did not abuse its broad discretion by denying Slack's question seeking to expose bias based upon a child's ability to describe sexual acts, because precluding this question did not create a real risk that juror partiality driven by the fact at issue would not otherwise be identified in voir dire.[8]

2. Slack contends that he was denied effective assistance of counsel in several respects.

> To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. To satisfy the deficiency prong, a defendant must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing

---

[8] See *Hurt v. State*, 298 Ga. 51, 59 (4) (779 SE2d 313) (2015).

7

professional norms. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.[9]

(a) In light of our holding in Division 1, supra, we need not consider Slack's claim that counsel was ineffective to the extent she failed to preserve an objection to the trial court's exclusion of General Question 31.

(b) Slack argues that trial counsel was ineffective because she failed to object to hearsay testimony from V. S.'s grandmother, father, and mother and from Detective Bennett.

As an initial matter, we note that the new Evidence Code applies to this case because the Appellant was tried in August 2013, after the January 1, 2013 effective date of the new Code.[10] However, the version of the Child Hearsay Statute that applies is former OCGA § 24-3-16 which was in effect at the time the Appellant committed the offenses. The statute provided:

---

[9] *Swanson v. State*, 306 Ga. 153, 155 (2) (829 SE2d 312) (2019) (citations and punctuation omitted).

[10] See Ga. L. 2011, pp. 99-100, § 1.

A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

Because V. S. was 16 years old when she made the initial outcry to her grandmother and the subsequent outcries, those statements were not admissible under the Child Hearsay Statute. However, such evidence was cumulative of V. S.'s own testimony, which alone was sufficient to support Slack's convictions.[11] And, there was other corroborating evidence, such as testimony that, during the relevant time period, V. S. refused to bathe, was frequently "spaced out," and would scream when it was time to return home after visiting her father or grandmother. "[W]here as here there is no prejudice, ineffectiveness of counsel does not lie."[12]

(c) Slack argues that trial counsel was ineffective in failing to request a jury instruction on the statute of limitation with regard to the child-cruelty charge (Count

---

[11] See *Brock v. State*, 270 Ga. App. 250, 254 (8) (605 SE2d 907) (2004).

[12] Id.

9

3) because the indictment did not include any tolling language as to that count. We agree and reverse the conviction on Count 3.

The first two counts of the 2013 indictment, which charged aggravated child molestation and child molestation, alleged certain conduct occurring between September 2002 and December 2003 against V. S., "a child under the age of sixteen (16) years[.]" The third count, however, alleged that, during this same 2002-2003 timeframe, Slack "maliciously cause[d V. S.], *a child under the age of 18*, cruel and excessive mental pain by repeatedly engaging in sexual activity with [her]."[13] Because the first two counts alleged conduct against a child under age 16, they invoked the tolling provisions of OCGA § 17-3-2.1 (a).[14] The language of the third count did not invoke the tolling provision, and was subject to dismissal as the indictment was not

---

[13] (Emphasis supplied.)

[14] OCGA § 17-3-2.1 (a) provides in part: "For crimes committed during the period beginning on July 1, 1992, and ending on June 30, 2012, if the victim of a violation of: (1) Cruelty to children, as defined in Code Section 16-5-70; [or] (5) Child molestation or aggravated child molestation, as defined in Code Section 16-6-4[,] is under 16 years of age on the date of the violation, the applicable period within which a prosecution shall be commenced under Code Section 17-3-1 or other applicable statute shall not begin to run until the victim has reached the age of 16 or the violation is reported to a law enforcement agency, prosecuting attorney, or other governmental agency, whichever occurs earlier. Such law enforcement agency or other governmental agency shall promptly report such allegation to the appropriate prosecuting attorney."

10

filed within seven years of the charged conduct.[15] This is so even though the previous two counts included the tolling language. The State's reliance on our decision in *Leftwich v. State*[16] to support its argument that the indictment should be read as a whole is misplaced.[17]

> In criminal cases, the statute of limitation runs from the time of the criminal act to the time of indictment. Where an exception is relied upon to prevent the bar of the statute of limitation, it must be *alleged and proved*. Indeed, the State bears the burden at trial to prove that a crime occurred within the statute of limitation, or, if an exception to the statute is alleged, to prove that the case properly falls within the exception.[18]

---

[15] See OCGA § 17-3-1 (c) (statute of limitations for felonies not punishable by death or a life sentence is seven years when the victim is under 18 years old); *State v. Godfrey*, 309 Ga. App. 234, 238 (2) (709 SE2d 572) (2011) (holding that the trial court did not err in granting a plea in bar as to counts that did not track the applicable version of the tolling statute).

[16] 299 Ga. App. 392 (682 SE2d 614) (2009), disapproved in part on other grounds by *Martin v. McLaughlin*, 298 Ga. 44 (779 SE2d 294) (2015).

[17] See *Godfrey*, 309 Ga. App. at 238 (2).

[18] *Taylor v. State*, 306 Ga. 277, 286 (3) (b) (830 SE2d 90) (2019) (emphasis supplied).

Because the State did not allege that the statute of limitation for child cruelty was tolled because V. S was under the age of 16, such proof was inadmissible.[19] "As no exception was alleged in the indictment, the State was incapable of proving an exception to toll the applicable [seven[20]]-year statute of limitation, as such proof was inadmissible."[21] Thus, even though the evidence at trial was undisputed that V. S. was between seven and eight years old at the time of the abuse, this evidence was inadmissible to prove that the statute of limitation for Count 3 was tolled.[22]

(i) *Deficiency prong.* At the motion for new trial hearing, Slack's trial counsel testified that she was generally familiar with tolling provisions, that she believed they should be included in the indictment, that she was unsure whether it was sufficient

---

[19] See *Moss v. State*, 220 Ga. App. 150 (469 SE2d 325) (1996).

[20] See OCGA § 17-3-1 (c).

[21] *Moss*, 220 Ga. App. at 150.

[22] See *Jannuzzo v. State*, 322 Ga. App. 760, 761-762 (746 SE2d 238) (2013) ("Criminal limitations statutes are to be liberally interpreted in favor of repose. The running of a statute of limitation for a criminal offense is ordinarily not interrupted unless an exception tolls its operation. Exceptions will not be implied to statutes of limitation for criminal offenses, and any exception to the limitation period must be construed narrowly and in a light most favorable to the accused.") (citations and punctuation omitted).

to allege that the victim was under age 18, and that she had no strategic reason not to request a jury instruction if there was a valid statute of limitation defense.

> [A]lthough decisions of counsel made based on a misunderstanding of the law are not automatically deficient, a defendant can carry his burden of showing deficiency if, under the circumstances, the challenged action cannot be considered a sound trial strategy. That is the case here, where reasonable trial counsel would not have made the same strategic decision if [s]he properly understood the law.[23]

Because the State did not allege a basis for tolling as to Count 3, because the State could thus not meet its burden[24] of proving that the crime occurred within the statute of limitation, and because the trial court did not properly instruct the jury on the State's burden in this regard, trial counsel's performance was deficient.[25]

(ii) *Prejudice prong.* "To authorize a jury instruction, there need only be slight evidence at trial supporting the theory of the charge."[26] As discussed above, because

---

[23] *Swanson*, 306 Ga. at 158 (2) (a).

[24] See *Godfrey*, 309 Ga. App. at 238 (2).

[25] Cf. *Taylor*, 306 Ga. at 288 (5) (b) (ii) (no deficient performance in failing to request a more specific instruction where the State alleged tolling; that allegation was thus material, and the trial court properly instructed the jury on the State's burden to prove every material allegation in the indictment).

[26] *Swanson*, 306 Ga. at 155 (2).

the State failed to allege tolling as to Count 3, it could not prove it at trial. Thus, the evidence that the child cruelty took place in 2002 and 2003, more than ten years before the indictment was filed, supported a theory that the charge was barred by the seven-year statute of limitation. The instruction was thus authorized. Had the jury been properly instructed, there is a "reasonable probability" that, but for trial counsel's deficient performance, the outcome of the trial would have been different. "In other words, [Slack] has established a 'probability sufficient to undermine confidence in the outcome' in Slack's trial."[27]

3. In light of our decision in Division 2 (c), reversing the conviction and the split sentence on Count 3, we remand the case for resentencing as to Counts 1 and 2.[28]

*Judgment affirmed in part and reversed in part and case remanded with direction. Miller, P. J., and Rickman, J., concur.*

---

[27] Id. (quoting *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984)).

[28] See OCGA § 17-10-6.2 (b); *Hughes v. State*, 341 Ga. App. 594, 597-598 (3) (802 SE2d 594) (2017) ("A sentence that does not comply with the OCGA § 17-10-6.2 split-sentence requirement is void. We are required to correct a void sentence, regardless of whether either party has raised the error on appeal.").